Lisa MARTIN, et al.,
Plaintiffs-Appellants,

v.

INTERNATIONAL OLYMPIC COMMIT-TEE, et al., Defendants-Appellees.

No. 84–5859.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1984.

Decided June 21, 1984.

Rehearing and Rehearing En Banc
Denied July 16, 1984.

**2.** *Lincoln v. District 9 of the International Associ-* *ation of Machinists,* 723 F.2d 627 (8th Cir.1983).

Daniella Sapriel, Santa Monica, Cal., Gilbert Gaynor, Susan D. McGreivy, Fred Okrand, Paul Hoffman, ACLU Foundation of So. California, Elaine Burton, Los Angeles, Cal., for plaintiffs-appellants.

Anthony B. Gordon, James W. Colbert, O'Melveny & Myers, Los Angeles, Cal., Richard G. Kline, Edward T. Colbert, Beveridge, DeGrandi & Kline, Washington, D.C., for Olympic Committee & Athletic Congress.

Ira Reiner, Marcia Haber Kamine, Thomas C. Bonaventura, Los Angeles, Cal., for L.A. Memorial Coliseum Commission.

Thomas L. Waddell, Parker, Stanbury, McGee, Babcock & Combs, John Missing, Max L. Gillam, Thomas M. Mustin, Latham & Watkins, Los Angeles, Cal., for L.A. Olympic Committee.

Russell J. Frackman, Robert N. Block, Mitchell, Silberberg & Knupp, Los Angeles, Cal., Samuel Pisar, John I. Huhs, Pisar & Huhs, New York City, for International Olympic Committee.

Before WALLACE, PREGERSON, and ALARCON, Circuit Judges.

WALLACE, Circuit Judge:

Certain women runners and runners' organizations (the women runners) appeal the denial by the district court of their motion for a preliminary mandatory injunction to require the organizers of the 1984 Los Angeles Summer Olympic Games to include 5,000 meter and 10,000 meter track events for women. The women runners claim that the failure to include these events constitutes gender-based discrimination that violates their equal protection rights under the fifth and fourteenth amendments and the Unruh Civil Rights Act, Cal.Civ.Code § 51 (West 1982) (the Act)[1]. The district court ruled that the women runners had not met all of the requirements for preliminary injunctive relief. We have jurisdiction under 28 U.S.C. § 1292(a)(1). We affirm.

I

The women runners are two runners' organizations and eighty-two[2] women from twenty-seven countries who compete in 5,000 meter and 10,000 meter track races. In August 1983, they filed this action in a California state court against the International Olympic Committee (IOC), the International Amateur Athletic Federation (IAAF), the United States Olympic Committee, The Athletic Congress of the United States, the Los Angeles Olympic Organizing Committee, and the Los Angeles Coliseum Commission, as well as various directors and officials of those entities (the Olympics organizations). The Olympics organizations removed the action to the United States District Court for the Central District of California. In March 1984, the women runners requested preliminary injunctive relief against the Olympics organizations. In a lengthy opinion, the district judge denied relief. The women runners appeal and ask us to remand with instructions to the district court to issue a mandatory preliminary injunction for the inclusion of 5,000 meter and 10,000 meter women's track events in the 1984 Summer Olympic Games.

According to the women runners, the process used to select new Olympic events has resulted in the continuation of an historical pattern of discrimination against women participants in the Olympic Games. The district court's opinion extensively reviewed the history of women's participation in the Games and concluded that the women runners made a strong showing that the early history of the modern Olympic Games was marred by blatant discrimination against women. The district court also found that women's participation in the Olympics has increased markedly during the past thirty-six years. Although there is not parity between men and women in either the number of competitors or the number of events, the district court found that women were progressing in both of these areas. For example, three new women's track and field events—the 3,000 meters, the 400 meter hurdles, and the marathon—will be included for the first time in the 1984 Games.

Although the pertinent background extends to the beginning of this century, the critical occurrence for this lawsuit occurred in 1949, when the IOC adopted rules to slow the rapid growth in the number of Olympic events within recognized sports.

---

1. In the district court, the women runners also argued that the actions of the Olympics organizations violated the equal protection provision of the California Constitution, art. I, sec. 7, and international law. The district court analyzed and rejected these claims. We need not reach these issues, as the women runners failed to raise them properly on appeal. *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1296 (9th Cir.1982); *Thompson v. Commissioner,* 631 F.2d 642 (9th Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

2. Although the women runners' briefs and the district court's opinion both refer to eighty-two women runners, the first amended complaint names only fifty-nine women runners as plaintiffs. The discrepancy has no bearing on our jurisdiction or our disposition of this case.

The successor rule of that effort, which is at issue in this litigation, is rule 32 of the 1970 Olympic Charter. It provides:

The IOC in consultation with the IFs [International Federations] concerned shall decide the events which shall be included in each sport, in bearing with the global aspect of the Olympic programme and statistical data referring to the number of participating countries in each event of the Olympic programme, of the world championships, of Regional Games and all other competitions under the patronage of the IOC and the patronage of the IFs for a period of one olympiad (four years).

Under this rule, an event must be recognized internationally through national championships and international competition during the four years before the time it is first considered for inclusion, and the decision on whether to include an event is made four years before the games in which it will first appear. Thus, the critical qualifying time period for races to be run for the first time in 1984 was from 1976 to 1980.

Track and field is a recognized Olympic sport. The IAAF is the body charged with regulating international track and field competition. The IAAF determines which track and field events will be included in international competition and for which events world records will be established. The IOC has also made the IAAF responsible for recommending new track and field events for inclusion in the Olympic Games. To assist in providing more women's events, the Women's Committee of the IAAF was organized. Although the IAAF may recommend new track and field events for inclusion in the games, the final decision on inclusion rests solely with the IOC.

The 5,000 meter and 10,000 meter track races have been a part of the men's Olympic program since 1912. In 1978, the Women's Committee of the IAAF requested that the IAAF grant world record status for women's competition in these two events and include them in international competition. The IAAF recognized an increased interest in the events but rejected the request on the grounds that world-wide participation was not yet on a high enough level. It was agreed to monitor progress "with a view to ... recommending their introduction as soon as this was justified." In 1980, the IAAF granted world record status to the two events but did not include them in world championship competition. Because the races were not yet sanctioned by the IAAF for international competition in 1980 when decisions about the 1984 Games were being made, the 5,000 meter and 10,000 meter women's races were not eligible under rule 32 for inclusion in the 1984 Games.

## II

Our review in this appeal is very limited. We may not reverse the district court's denial of the preliminary injunction unless the district court abused its discretion or relied on an erroneous legal premise. *Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 752 (9th Cir. 1982) (*Sports Form*); *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1980). We must therefore determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," *Sports Form*, 686 F.2d at 752, *quoting Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823 (1971), as well as whether the district court followed the appropriate legal standard governing the issuance of preliminary injunctions, or misapprehended the law with respect to the underlying issues in applying those standards. *Sports Form*, 686 F.2d at 752; *Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir.1981).

In this circuit, a party seeking preliminary injunctive relief must meet one of two tests. Under the first, a court may issue a preliminary injunction if it finds that:

(1) the [moving party] will suffer irreparable injury if injunctive relief is not granted, (2) the [moving party] will prob-

ably prevail on the merits, (3) in balancing the equities, the [non-moving party] will not be harmed more than [the moving party] is helped by the injunction, and (4) granting the injunction is in the public interest.

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 87 (9th Cir.1975). Alternatively, a court may issue a preliminary injunction if the moving party demonstrates *"either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* at 88 (emphasis in original), *quoting Charlie's Girls, Inc. v. Revlon, Inc.,* 483 F.2d 953, 954 (2d Cir.1973). Under this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits. *Sports Form,* 686 F.2d at 753. There is one additional factor we must weigh. In cases such as the one before us in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite,* courts should be extremely cautious about issuing a preliminary injunction. *See, e.g., Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1980).

In the present case, the district judge applied the correct legal standard governing the issuance of preliminary injunctions. After citing several of the controlling precedents referred to above, the district judge weighed the women runners' request for injunctive relief under the alternative test. He found that the balance of hardships tipped strongly in favor of the women runners. He reasoned that the inherently brief period of an athlete's peak physical capacity may preclude many of the women runners from ever competing in the Olympic Games if they are not allowed to run in 1984. On the other hand, the district judge found that issuing a mandatory injunction requiring the two races at this late date would impose substantial administrative and logistical difficulties on the Olympics organizations. The district judge determined that the irreparable harm the women runners would suffer if they were not allowed to compete outweighed the incremental administrative burden that would be imposed on the Olympics organizations if they had to organize two additional track and field events for women. Notwithstanding these determinations, which we accept, the district judge denied the requested injunction because he also concluded that the women runners had failed to demonstrate a fair chance of success on the merits of their gender discrimination claims. It is this conclusion which the women runners vigorously challenge and which is the issue before us on this appeal.

### A.

Because it will be unnecessary to reach the constitutional question if this appeal can be disposed of on statutory grounds, we turn first to the women runners' claim that the lack of 5,000 meter and 10,000 meter track races for women violates the Act. It provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal.Civ.Code § 51 (West 1982). The women runners argue that the district judge applied an erroneous legal standard when he found that they had not demonstrated a fair chance of success on the merits of their Unruh Act claim. The judge reasoned that "the Olympic rules for including events are rationally related to the orderly administration of the Games." The women runners contend that the proper standard is whether the rules are justified by a compelling societal interest.

The California Supreme Court examined the history and policy of the Act in *In re Cox,* 3 Cal.3d 205, 474 P.2d 992, 90 Cal.

Rptr. 24 (1970) (*Cox*). The court found that the Act and its statutory predecessor derived from the common law right of equal access to inns, common carriers, and similar enterprises "affected with the public interest." *Id.* at 212–13, 474 P.2d at 996, 90 Cal.Rptr. at 28. The court also traced the history of amendments to this "public accommodations" statute and concluded that the California legislature intended the Act "to prohibit all arbitrary discrimination by business establishments." *Id.* at 216, 474 P.2d at 999, 90 Cal.Rptr. at 31. The court also pointed out, however, that the Act's "broad interdiction . . . is not absolute; [business enterprises] may establish reasonable regulations that are rationally related to the services performed and facilities provided." *Id.* at 212, 474 P.2d at 995–96, 90 Cal.Rptr. at 27–28. The district judge apparently relied upon this language in applying the Act to this case. Standing alone, this language appears to justify the district judge's Unruh Act test. Our doubt occurs due to the California Supreme Court's subsequent opinion in *Marina Point, Ltd. v. Wolfson*, 30 Cal.3d 721, 743, 640 P.2d 115, 128, 180 Cal.Rptr. 496, 510, *cert. denied*, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982) (*Marina Point*), where the court indicated that an exclusionary policy must serve "some compelling societal interest" to avoid invalidity under the Act. It is this apparent inconsistency that we must resolve.

The women runners rely on the *Marina Point* language to support their claim that the district judge applied an erroneous standard in assessing their likelihood of success on the merits of their Unruh Act claim. The Olympics organizations, on the other hand, assert that the district court's "rationally related" statement merely reflects a conclusion that rule 32 does not arbitrarily discriminate against women athletes. Read in context, we find the district court's statement ambiguous. We do not fault the district court because we find some difficulty with the California case law on the issue. Nevertheless, it is unnecessary for us to remand, because we may affirm the decision of the district court if the result is correct, even if the district court relied on a wrong ground or gave a wrong reason. *E.g., United States v. Best*, 573 F.2d 1095, 1100–01 (9th Cir.1978).

■■■ Assuming, but not deciding, that the Act applies to the running events themselves, we have difficulty with the theory advanced by the women runners. The women runners clearly are not seeking an opportunity to compete against men in the existing men's 5,000 meter and 10,000 meter races. Thus, they do not attempt to invoke the Act as a means of removing arbitrary barriers to their use or enjoyment of existing "accommodations, advantages, facilities, privileges or services." Yet a challenge to the total exclusion of women from these races would appear to be the most logical application of the Act. Instead, the women runners claim that the Act requires the creation of new competitive opportunities for them, through the use of this court's equitable powers, to remedy the allegedly unequal results that have obtained under, as we hold below, the facially neutral test of rule 32. We express no view on whether the Act would apply to a direct challenge to the men's events. We do conclude that it may not be used as argued by the women runners. We simply do not read the Act to compel the creation of separate but equal events for women. The decisional law interpreting the Act provides no support for the remedy the women runners seek. Thus, we doubt the application of the Act to accommodate the women runners' claim and, therefore, find a lack of a fair chance of success as a matter of law.

■■■ There is a second reason why we believe the district court should not be reversed. The California Supreme Court's interpretation of the Act indicates that it is intended to proscribe "*arbitrary* discrimination." *E.g., Cox*, 3 Cal.3d at 212, 474 P.2d at 995, 90 Cal.Rptr. at 27 (the design of the Act was "to interdict all arbitrary discrimination by a business enterprise."). In *Marina Point*, the court explained that "business establishments [may not] with-

hold[ ] their goods or services from a broad class of individuals in order to 'cleanse' their operations from the alleged characteristics of the members of an excluded class." 30 Cal.3d at 725, 640 P.2d at 117, 180 Cal.Rptr. at 499. The court emphasized that the rights protected by the Act are enjoyed by all persons, as *individuals. Id.* at 740, 640 P.2d at 126, 180 Cal.Rptr. at 508 ("[T]he exclusion of individuals from places of public accommodation or other business enterprises covered by the Unruh Act on the basis of class or group affiliation basically conflicts with the individual nature of the right afforded by the act of access to such enterprises."). Thus, the "arbitrary discrimination" prohibited by the Act is the "blanket" exclusion of any class of persons. *E.g., Marina Point,* 30 Cal.3d 721, 640 P.2d 115, 180 Cal.Rptr. 496 (children excluded from apartment complex); *In re Cox,* 3 Cal.3d 205, 474 P.2d 992, 90 Cal.Rptr. 24 (persons with long hair excluded from shopping center); *Stoumen v. Reilly,* 37 Cal.2d 713, 234 P.2d 969 (1951) (homosexuals excluded from public restaurants and bars); *Orloff v. Los Angeles Turf Club,* 36 Cal.2d 734, 227 P.2d 449 (1951) (persons with immoral reputations excluded from public race track); *Curran v. Mount Diablo Council of The Boy Scouts of America,* 147 Cal.App.3d 712, 195 Cal.Rptr. 325 (1983) (homosexuals excluded from Boy Scouts); *Easebe Enterprises, Inc. v. Rice,* 141 Cal.App.3d 981, 190 Cal.Rptr. 678 (1983) (exclusion of males from bar). When a statute or rule arbitrarily discriminates against any class of persons, it may be justified only if there is a compelling societal interest. *Marina Point,* 30 Cal.3d at 743, 640 P.2d at 128, 180 Cal.Rptr. at 510. A business establishment may exclude individuals, however, if they violate a reasonable deportment rule which is rationally related to the services performed. *Cox,* 3 Cal.3d at 217, 474 P.2d at 999, 90 Cal.Rptr. at 31. This interpretation accommodates best what would otherwise be an ambiguity between *Cox,* 3 Cal.3d at 212, 474 P.2d at 995–96, 90 Cal. Rptr. at 27–28 (rational relation required for exclusion of individual), and *Marina Point,* 30 Cal.3d at 743, 640 P.2d at 128, 180 Cal.Rptr. at 510 (compelling societal interest required for exclusion of entire class of persons).

Applying this analysis, we hold that rule 32's process for adding new events does not operate as a blanket exclusion of any class of persons and is therefore not "arbitrary discrimination." It applies equally to all proposed new events and the would-be Olympic competitors for those events, and, therefore, does not violate the Act. Because the finding by the district court of rational relation is functionally similar to a finding that rule 32 is not discriminatory, no remand to the district court is necessary and we may affirm its judgment.

In addition, we find persuasive the argument that a court should be wary of applying a state statute to alter the content of the Olympic Games. The Olympic Games are organized and conducted under the terms of an international agreement— the Olympic Charter. We are extremely hesitant to undertake the application of one state's statute to alter an event that is staged with competitors from the entire world under the terms of that agreement.

We therefore conclude that the district judge did not abuse his discretion in determining that the women runners have not demonstrated a fair chance of success on the merits of their Unruh Act claim. Having concluded that the state statute does not conclude this appeal, we must now turn to the constitutional claim of the women runners.

B.

The women runners contend that the lack of equal medal opportunities for women in the 1984 Olympic Games violates their equal protection rights under the fifth and fourteenth amendments. Although the fourteenth amendment predicate of state action is contested by the Olympics organizations, we cannot say, on this record, that the district court erroneously found state action present.

The disproportionate impact of a statute or regulation alone, however, does not violate the equal protection clause. To succeed on their equal protection claim, the women runners must show that the allegedly disproportionate impact of rule 32 on women reflects a discriminatory purpose. *See Washington v. Davis*, 426 U.S. 229, 239–42, 96 S.Ct. 2040, 2047–2049, 48 L.Ed.2d 597 (1976); *accord Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–65, 270, 97 S.Ct. 555, 562–563, 50 L.Ed.2d 450 (1977) (*Arlington Heights*). It would be sufficient to show that an invidiously discriminatory purpose was a motivating factor in the challenged actions; it is not necessary to prove that such a discriminatory purpose was the sole basis for limiting women's competition in the Olympic Games. *See Arlington Heights*, 429 U.S. at 265–66, 97 S.Ct. at 563–564.

Rule 32 is facially gender-neutral. It describes the procedures for determining events to be included in the Olympic Games without referring to the competitors' sex. In *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (*Feeney*), the Supreme Court established the analytical framework for assessing equal protection challenges to classifications that are gender-neutral on their face, but have a disparate impact on women. Under *Feeney*, a court must first examine whether the classification or regulation is indeed neutral, in the sense that it is not overtly or covertly gender-based. *Id.* at 274, 99 S.Ct. at 2293. Second, the court must determine whether the adverse effects under the classification reflect invidious gender-based discrimination. *Id.* In making this second determination, a court may apply the factors identified in *Arlington Heights* as indicative of a discriminatory purpose. These factors include:

> The historical background of the decision ... particularly if it reveals a series of official actions taken for invidious purposes.... The specific sequence of events leading up to the challenged decision may also shed some light on the decisionmaker's purposes.... Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role. Substantive departures too may be relevant, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached.

*Arlington Heights*, 429 U.S. at 267, 97 S.Ct. at 564 (citations omitted).

In the case before us, the district judge correctly identified *Feeney* and *Arlington Heights* as the controlling precedents. After carefully applying the analysis outlined in those cases, the district judge found that rule 32 was neither overtly nor covertly gender-based. He also found that the women runners had failed to show that the unequal impact of rule 32 reflected invidious gender-based discrimination.

The women runners dispute both of these determinations. First, they claim that rule 32 is not in fact gender-neutral because it has been applied almost exclusively to women's events. Because there were a great many more men's events than women's events in 1949 when rule 32's predecessor was enacted, the women runners argue that rule 32 has impacted women athletes disproportionately and is therefore not a gender-neutral classification. They argue that, in essence, they are frozen into a secondary role because new women's events will always be restricted by rule 32. This argument is simply untenable after the Supreme Court's decision in *Feeney*. The Court there ruled that the Massachusetts lifetime hiring preference for "veterans" was a gender-neutral classification despite evidence that over 98% of the veterans in that state were male. The Court explained that the veterans preference statute operated to exclude both male and female non-veterans and thus was constitutionally "neutral." *See* 442 U.S. at 276–78 & n. 23, 99 S.Ct. at 2295–2296 & n. 23. Similarly, rule 32 undeniably applies to both men and women athletes as it establishes criteria for adding *all* new events to

the Olympic program. Indeed, the women runners' own brief concedes that forty-three new men's events have been added since 1949—presumably under the process of rule 32 and its predecessors—while forty-eight new events have been added for women competitors during this same period. Thus, the women runners' argument that rule 32 is not gender-neutral is unpersuasive.

■ The women runners also dispute the district court's determination that they failed to demonstrate a fair chance of proving purposeful discrimination behind the unequal number of Olympic events for men and women. Initially they contend that they should not have been required to shoulder the burden of proof. The women runners mistakenly rely on *Columbus Board of Education v. Penick*, 443 U.S. 449, 464, 99 S.Ct. 2941, 2950, 61 L.Ed.2d 666 (1979), and *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 537–38, 99 S.Ct. 2971, 2979–2980, 61 L.Ed.2d 720 (1979), in arguing that the district court's determination that they made a strong showing of historical discrimination against women's participation in the Olympic Games should have shifted the burden to the Olympics organizations to show that their actions were not motivated by discriminatory intent. The inference of discriminatory intent in those cases was based on the affirmative duty to desegregate public schools. *See Penick*, 443 U.S. at 458, 99 S.Ct. at 2946, *citing Brown v. Board of Education*, 349 U.S. 294, 301, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955). These cases do not apply here. *Cf. Feeney*, 442 U.S. at 273, 99 S.Ct. at 2293 ("[T]he Fourteenth Amendment guarantees equal laws, not equal results."). Although an historical background of invidious discrimination is a relevant factor in examining rule 32 for evidence of a discriminatory purpose, *see Arlington Heights*, 429 U.S. at 267, 97 S.Ct. at 564, it is insufficient alone to create a presumption of purposeful discrimination or to shift the burden of showing discriminatory intent behind this facially neutral regulation.

■ We express no opinion on whether the women runners will eventually be able to prove intent to discriminate. A full record after a trial will provide the ultimate answer.

Because of the limited scope of our review of the law applied by the district court and because the fully developed factual record may be materially different from that initially before the district court, our disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits.

*Sports Form*, 686 F.2d at 753. We now only decide whether the district judge abused his discretion when he found, based upon this record, that the women runners did not have a fair chance of proving intentional discrimination.

The district judge made a lengthy analysis based upon each of the *Arlington Heights* factors. Relying upon the facts we have briefly outlined for purposes of this opinion plus many other detailed findings, the district court concluded that the women runners had not made the requisite showing. After a thorough review of the record, we cannot overrule his determination. Therefore, because the district judge applied the proper legal standard and because we cannot conclude that his findings show a "clear error of judgment," we may not reverse his decision not to issue a preliminary injunction based on the women runners' equal protection claims. *See Sports Form*, 686 F.2d at 752.

AFFIRMED.

ALARCON, Circuit Judge, Special concurrence.

I concur in the opinion of the court. I write separately to express my concern that the views of the dissent, if adopted, would create an unwise and mischievous precedent and wipe out many hard fought victories in the battle for equality.

By invoking California's Civil Rights Act to uphold a demand of the women runners for separate but equal women's 5000m and

10,000m events, our dissenting colleague would have us turn back the clock to a time when "whites only" signs separated this nation in our use of hotels, restaurants, restrooms, drinking fountains, and bus seats. California's Civil Rights Act was enacted to eliminate separate but equal restrictions and to guarantee to all persons the *same* accommodations, privileges, advantages, and services. Recently the California Supreme Court stressed that California's Civil Rights Act was a codification of the common law doctrine that certain businesses providing public accommodations must serve all persons "without discrimination." *Marina Point, Ltd. v. Wolfson,* 30 Cal.3d 721, 738, 640 P.2d 115, 180 Cal.Rptr. 496 (1982).

The Olympic Committee has scheduled 5000m and 10,000m events for the 1984 Olympics. The women runners do not seek full and equal access to the scheduled 5000m and 10,000m events which are now restricted to men. Instead, they seek the assistance of the court to compel separate but equal 5000m and 10,000m events for women. California's Civil Rights Act has never been interpreted to permit or require separate but equal access to accommodations, privileges or advantages. In each case in which there has been a challenge to a restriction imposed on a person by the owner of a business establishment, the California courts have ordered that the plaintiff was entitled to the same privileges, advantages or accommodations available to the preferred group. *See Rolon v. Kulwitzky,* 153 Cal.App.3d 289, 200 Cal.Rptr. 217 (1984) (Lesbian couples are entitled to service in booths reserved for heterosexual couples); *O'Connor v. Village Green Owners Association,* 33 Cal.3d 790, 191 Cal. Rptr. 320, 662 P.2d 427 (1983) (Families with children under 18 are entitled to purchase condominiums despite covenants, conditions, and restrictions to residency by persons over 18 years); *Curran v. Mount Diablo Council of The Boy Scouts of America,* 147 Cal.App.3d 712, 195 Cal.Rptr. 325 (1983) (The Boy Scouts cannot exclude

homosexuals); *Marina Point, Ltd. v. Wolfson,* 30 Cal.3d 721, 180 Cal.Rptr. 496, 640 P.2d 115 (1982) (Landlords cannot exclude parents with children); *Winchell v. English,* 62 Cal.App.3d 125, 133 Cal.Rptr. 20 (1976) (Owners of mobile home court cannot restrict subleasing to blacks); *Hales v. Ojai Valley Inn and Country Club,* 73 Cal.App.3d 25, 140 Cal.Rptr. 555 (1977) (Tieless men in leisure suits may not be excluded from dining room facilities which do not require women to wear ties); *Easebe Enterprises, Inc. v. Rice,* 141 Cal.App.3d 981, 190 Cal.Rptr. 678 (1983) (It is a violation of the Unruh Act to exclude all males from a business establishment which sells liquor to women only during certain hours).

I am mindful of the regrettable frustration which has resulted from the failure of the representative of the women runners to make a timely request to qualify special 5000m and 10,000m events for women when they obtained approval under rule 32 for their participation in separate 3000m and marathon events. Their short term disappointment should not blind us to the harm which would follow if the courts were now to interpret legislation, enacted to end class based discrimination, to require a business establishment to offer separate accommodations, privileges, advantages, or services. Such an apartheid construction of California's Civil Rights Act would raise serious constitutional questions under the equal protection clause. *See Brenden v. Independent School District 742,* 477 F.2d 1292 (8th Cir.1973) (It is a violation of the equal protection clause to deny participation to women in a cross-country race restricted to males).

PREGERSON, Circuit Judge, dissenting:

I dissent. Had the district court correctly construed the Unruh Act, plaintiffs would have shown a likelihood of success on the merits of their claim that the IOC violated California law by excluding them from the Los Angeles Olympics. Because the Unruh Act disposes of this appeal, I do not reach the equal protection issue.[1]

---

**1.** Plaintiffs appeal the district court's denial of a

preliminary injunction. The action was origi-

## I

### Discrimination Against Women Athletes in the Olympics

Baron Pierre de Coubertin, founder of the modern Olympic Games, described the Olympics as "the solemn and periodic exaltation of male athleticism with internationalism as a base, loyalty as a means, art for its setting, and female applause as reward." As late as 1954, the International Olympic Committee (IOC) voted to limit women's participation to those events "particularly appropriate to the female sex." This attitude toward women has resulted in a continuing disparity between male and female opportunities to compete in the Olympic Games.

From the beginning, women athletes have challenged the IOC's policy of discriminating against them in track and field. Women were not permitted to participate in track and field events until the 1928 Games, when the IOC included eight events for women. That year, women from the British team boycotted the Games to protest the IOC's failure to include a full program of events for women athletes. After the 1928 Games, in which several women athletes collapsed after the 800 meter race, the IOC voted to further limit women's races to 200 meters (½ lap around the track). This restrictive policy continued for 32 years until the IOC reinstated the 800 meter race for the 1960 Games.

Until quite recently, the IOC and its track and field affiliates refused to sanction any distance races for women. When officials of the Amateur Athletics Union discovered that Katherine Switzer had run the 1967 Boston Marathon, they suspended her from the AAU.[2] The longest race for

women at the 1980 Games was only 1500 meters.

The track and field program for men, on the other hand, was virtually complete by the 1912 Olympics. The IOC has added only two events to the men's track and field program since then. In the 1984 Games, despite the recent addition of three women's events, the men's track and field program will still include seven more events than the women's program.

Against this background of institutionalized, gender-based discrimination, the IOC in 1949 adopted a facially neutral policy designed to limit the number of new events added to the Olympic program. Because women started from a position of distinct disadvantage in the total number of Olympic events, this policy, now Rule 32 of the Olympic Charter, affected women athletes disproportionately and contributed to continuing gender-based disparity in opportunities for Olympic competition.[3] The adoption of Rule 32 does not excuse the fact that men are permitted to compete in middle-distance races and women are not.

## II

### Unruh Act Claim

#### A. *Scope of the Act*

The district court found that the balance of hardships tips decidedly in favor of plaintiffs, but denied a preliminary injunction because the court believed that plaintiffs were unlikely to succeed on the merits of their Unruh Act claim. Proper application of the Unruh Act is thus crucial to the disposition of this appeal. The Unruh Act declares:

> All persons within the jurisdiction of this state are free and equal, and no matter

nally filed in the California state courts but was removed to the federal district court under federal question jurisdiction. 28 U.S.C. § 1331 (1982). We have pendent jurisdiction over the Unruh Act claim.

**2.** The Amateur Athletics Union is the precursor to The Athletic Congress, the organization that governs amateur track and field in the United States.

Katherine Switzer ran under the name "K. Switzer." When officials discovered that "K. Switzer" was a woman, they unsuccessfully attempted to remove her from the race.

**3.** In fact, for *all* events in the 1980 Olympics, male athletes had three times the number of opportunities to win an Olympic medal that female athletes had.

what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal.Civ.Code § 51 (West 1982). Because defendant organizations constitute a business establishment, and the opportunity to compete in the Olympics is a privilege or advantage that defendants provide, the opportunity for women to compete in the Los Angeles Olympics on an equal basis with men falls within the scope of the Unruh Act.

The California courts have liberally construed the business establishment requirement. The California Supreme Court has held that the statute's inclusive language demonstrates a legislative intent that the term be construed "in the broadest sense reasonably possible." *O'Connor v. Village Green Owners Association*, 33 Cal.3d 790, 796, 662 P.2d 427, 431, 191 Cal.Rptr. 320, 324 (1983) (nonprofit condominium owners association held to be a business establishment).

An organization is within the scope of the Unruh Act unless it is "truly private." *Curran v. Mount Diablo Council of The Boy Scouts of America*, 147 Cal.App.3d 712, 733, 195 Cal.Rptr. 325, 337 (1983). In *Curran*, the court found that the Boy Scouts were a business establishment because the organization opened its membership to the general public. *Id.* at 732, 195 Cal.Rptr. at 337. Although the court established no single test for determining what constitutes a private club, it found that exclusivity of membership is necessary. *Id.* at 731, 195 Cal.Rptr. at 337.

The Olympic Games are not run as a private club. To the contrary, the organizers of the 1984 Olympics have emphasized, especially in response to the recent national boycotts, that their policy is to encourage athletes from around the world to participate, subject only to their athletic qualification. Moreover, the United States Olympic Committee, like the Boy Scouts, *Curran*, 147 Cal.App.3d at 734, 195 Cal.Rptr. at 339,

operates under a congressional charter. In so doing, the Committee provides a similarly quasi-public service. I would therefore find that defendants constituted a business establishment.

Plaintiffs have also satisfied the second requirement of the Unruh Act—that the right denied to the women runners be an accommodation, advantage, facility, privilege, or service. Although the Unruh Act was modeled upon traditional public accommodations statutes, the Act expanded the scope of those statutes. *Marina Point, Ltd. v. Wolfson*, 30 Cal.3d 721, 731, 640 P.2d 115, 120, 180 Cal.Rptr. 496, 502, *cert. denied*, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982). Thus, in *Curran*, the court had no trouble finding that the opportunity to join the Boy Scouts was a service under the Act. *Curran*, 147 Cal.App.3d at 733, 195 Cal.Rptr. at 338. Further, the construction of other public accommodations statutes supports the conclusion that participation in an athletic contest is within the scope of the Act. *See United States v. Slidell Youth Football Association*, 387 F.Supp. 474 (E.D.La.1974) (federal public accommodations statute covers establishments which provide a form of participatory entertainment); *New York Roadrunners Club v. State Division of Human Rights*, 81 A.D.2d 519, 437 N.Y.S.2d 681 (1981) (participation in the New York City Marathon is covered by New York state public accommodations statute), *aff'd on other grounds*, 55 N.Y.2d 122, 432 N.E.2d 780, 447 N.Y.S.2d 908 (1982); *National Organization for Women, Essex Chapter v. Little League Baseball, Inc.*, 127 N.J.Super. 522, 318 A.2d 33 (App.Div.1974) (private, nonprofit baseball organization is public accommodation under New Jersey statute).

I do not believe that the California Legislature intended that an athletic contest such as the Olympics, which is a major public event, should be free under California law to discriminate openly against a class of participants on the basis of sex, race, color, religion, ancestry, or national origin.

## B. *Discrimination Under the Act*

The primary purpose of the Unruh Act is "to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the Act." *Curran,* 147 Cal. App.3d at 733, 195 Cal.Rptr. at 338; *see also Marina Point,* 30 Cal.3d at 733, 640 P.2d at 125, 180 Cal.Rptr. at 507. Although the Act explicitly prohibits discrimination on the basis of sex, the Act has been construed to bar *all* forms of arbitrary discrimination. *In re Cox,* 3 Cal.3d 205, 216, 474 P.2d 992, 999, 90 Cal.Rptr. 24, 31 (1970). Arbitrary discrimination has been defined as the exclusion of individuals based on a generalization about the class to which they belong.[4] *Marina Point,* 30 Cal.3d at 740, 640 P.2d at 126, 180 Cal. Rptr. at 508.

Unlike the equal protection clause of the fourteenth amendment, the Unruh Act requires the court to find only that women are excluded from the particular privilege, facility, or service. The motivation for that exclusion is irrelevant. Contrary to the majority's belief, the existence of a facially neutral rule, such as Rule 32, which effectively perpetuates past discrimination, is also irrelevant to the Unruh Act analysis. The Act eschews *any* form of discrimination based on sex, race, color, religion, ancestry, or national origin practiced or perpetuated by a business establishment. In grafting onto the Unruh Act a discriminatory purpose analysis, the majority disregards the Act's focus on the individual's right of equal access to the facilities and privileges of business establishments. *See Marina Point,* 30 Cal.3d at 740, 640 P.2d at 126, 180 Cal.Rptr. at 508. Under the majority's "arbitrary" Unruh Act analysis, had the "no children" policy in rental housing in *Marina Point* been less than obvious, the California Supreme Court would have had to sustain the landlord's policy, regardless of its discriminatory effect, because the policy was "rationally related" to his business.[5] *Marina Point,* however, requires defendants to justify any exclusion of individuals from a business enterprise on the basis of class or group affiliation by demonstrating a "compelling societal inter-

[4]. The majority apparently believes that the Unruh Act does not apply to plaintiffs' claim because plaintiffs ask the court to order the addition of equal races for women, but not to compete against men. By this reasoning, a public library that provided restrooms for men only could not be compelled under the Unruh Act to provide separate facilities for women.

The courts have acknowledged, however, that separate athletic teams or competitions for men and women may provide equality of opportunity. *Lafler v. Athletic Bd. of Control,* 536 F.Supp. 104, 106 (W.D.Mich.1982); *see Clark v. Arizona Interscholastic Ass'n,* 695 F.2d 1126, 1128–32 (9th Cir.1982); *O'Connor v. Bd. of Educ.,* 645 F.2d 578, 582 (7th Cir.1981); *Petrie v. Illinois High School Athletic Ass'n,* 75 Ill.App.3d 980, 394 N.E.2d 855, 863, 31 Ill.Dec. 653, 660 (1979); *Mularadelis v. Haldane Cent. School Bd.,* 74 A.D.2d 248, 255–57, 427 N.Y.S.2d 458, 463–64 (1980); *see also* 45 C.F.R. §§ 86.41 & 106.41(b) (1983) (separate teams for each sex satisfies Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1686 (1982)). Moreover, defendants, not the women runners, created the system of separate events for men and women in the Olympics, and, therefore, should not now use that decision as a shield against legal action to end discrimination.

Finally, my concurring colleague's views on separate but equal would be persuasive if we were dealing with invidious discrimination based on race, religion, or national origin. But the analysis misses the mark in a case dealing with gender-based discrimination in athletic contests. Comparing the odious doctrine of apartheid with separate athletic events for men and women distorts the concept of equality of opportunity in athletic contests and overlooks the physical differences between the sexes as well as the cases considering this issue cited above. If the concurrence's reasoning were carried to its logical conclusion, all Olympic events in which men and women participate separately would be banned as apartheid.

[5]. For example, the majority's analysis would allow an all-male civic club that had originally explicitly excluded women to adopt a regulation requiring any new member to be approved by a ⅔ vote of the existing members. The policy might be rationally related to maintaining camaraderie among the members but it certainly could also be used to discriminate against women. *See United States v. Slidell Youth Football Ass'n,* 387 F.Supp. 474 (E.D.La.1974).

est" for doing so. *Id.* at 743, 640 P.2d at 128, 180 Cal.Rptr. at 510.[6]

Defendants have not presented a compelling societal interest to justify the exclusion of women from competition in the 5,000 and 10,000 meter races. Members of the Los Angeles Olympic Organizing Committee have acknowledged that, even at this late date, it would be administratively possible to add the events. Further, plaintiffs have even satisfied defendants' rule limiting the Olympic program to widely practiced events that can attract a representative field of competitors. Plaintiffs demonstrated below that women throughout the world participate in the 5,000 and 10,000 meter events, even though international track and field organizations sanctioned the two events with world-class status only four years ago.

In short, the California Supreme Court's construction of the Unruh Act in *Marina Point* leaves little room for debate: when individuals are excluded from full and equal access to a privilege that a business establishment provides, the exclusion violates the Unruh Act unless defendant can point to a compelling societal justification for the exclusion. Because defendants have not shown a compelling reason for excluding women runners from competing in the 5,000 and 10,000 meter races, the injunction should issue.

### III
### Conclusion

The IOC made concessions to the widespread popularity of women's track and field by adding two distance races this year. The IOC refused, however, to grant women athletes equal status by including all events in which women compete internationally. In so doing, the IOC postpones indefinitely the equality of athletic opportunity that it could easily achieve this year in Los Angeles. When the Olympics move to other countries, some without America's commitment to human rights, the opportu-

nity to tip the scales of justice in favor of equality may slip away. Meanwhile, the Olympic flame—which should be a symbol of harmony, equality, and justice—will burn less brightly over the Los Angeles Olympic Games.

---

6. Defendants' contention that *Marina Point* requires a rational relationship test is incorrect; *Marina Point* explicitly rejects the rational rela-

tionship test. *Marina Point,* 30 Cal.3d at 740–41 n. 9, 640 P.2d at 127 n. 9, 180 Cal.Rptr. at 508 n. 9.