The **NATIONAL WILDLIFE FEDERATION, et al.,**
Plaintiffs-Appellants,

v.

Tom **COSTON, Regional Forester, et al., Defendants-Appellees.**

No. 84–4198.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 1985.

Decided Oct. 15, 1985.

---

Thomas France, National Wildlife Federation, Missoula, Mont., for plaintiffs-appellants.

Robert G. Steinberg, U.S. Dept. of Justice, Washington, D.C., Terry Coffin, Runft, Leroy, Stecher, Coffin & O'Riordan,

Chartered, Boise, Idaho, for defendants-appellees.

Before DUNIWAY, HUG, and SKOPIL, Circuit Judges.

DUNIWAY, Circuit Judge:

The National Wildlife Federation and the Montana and Idaho Wildlife Federations appeal from the district court's order denying their motion for a preliminary injunction to halt road construction projects in the Northern Region of the Forest Service authorized by a regional Capital Investment Program. We affirm.

I. *Background.*

The Forest Service has responsibility for managing the National Forest System. 36 C.F.R. 200.3(b)(2) (1984). Each National Forest is managed by a Forest Supervisor. In addition, the National Forests have been organized into nine administrative regions, each directed by a Regional Forester.

The Forest Supervisor of each National Forest within Region I has responsibility for the land management activities in the Forest under his control. He decides whether or not to initiate and eventually approve or disapprove a road construction project in that Forest, except as an administrative appeal to the Regional Forester may dictate otherwise. These decisions are based on the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 *et seq.,* process, which includes documentation ranging from broad programmatic Environmental Impact Statements (EISs) to site specific project Environmental Analyses (EAs), and extensive public involvement opportunities. Once this process has been completed, the Regional Forester has the responsibility of assigning regional priorities for the allocation of limited funds to programs and projects which have been approved by each Forest Supervisor.

Tom Coston is Regional Forester for Region I, a region embracing thirteen National Forests in the states of Montana, Idaho, North Dakota, and South Dakota. In 1981, Coston implemented an amendment to the Forest Service Manual (FSM) which set out a regional Capital Investment Road and Bridge Program (CIP). (FSM 7710.33.) The CIP formalized existing procedures for determining how regional funds should be allocated for construction proposals approved by Region I Forest Supervisors.

The CIP amendment states:

Regional policy is to provide centralized program management for road and bridge construction, reconstruction, and betterment public works projects estimated to cost in excess of $25,000. The Regional Forester shall reserve and allocate funds for these projects to Forests based on Regional priority and availability of funds....

The Regional objective is to manage public works construction funds effectively and maintain accountability for both quantity and quality in meeting Regional goals. Objective is to identify and keep current 5 years of capital investment projects which meet the following program objectives. The objectives are listed in order of Regional priority.

a. Provide new road and bridge access to commercial timber lands in RARE II and other unroaded areas released or available for development.

b. Provide adequate road and bridge access to harvest timber areas threatened or damaged by pests.

c. Construct new roads and bridges in areas not classified as unroaded to support the 5-year timber harvest program.

d. Repair pavement structures and bridges where analyses clearly show a need to protect investment or resolve safety and emergency problems....

e. Construct/reconstruct roads, bridges and terminal facilities to meet the Region's timber harvest, other resource or environmental needs.

The amount of funds available for each category shall be determined annually by the Regional Forester, depending on the

final budget advice and the needs identified by the Forest Supervisors. (FSM 7710.33—1–2).

The CIP operates in the following manner: Forest Supervisors annually update data files for construction projects currently in the system and submit to the Regional Forester proposals for additional projects based on the five categories set out above. (FSM 7710.33—2). All such proposals are reviewed by a Regional office team consisting of representatives from Engineering; Timber Management; Recreation; Administrative Services; Planning, Programming; and Budgeting; and other staff as required. This team ranks each project by priority in each of the five categories after considering the following factors: forest priority; importance of project; previously committed cost-share or other written agreements; regional program objectives. (FSM 7710.33—3). Each project is only compared with the other projects in the same category and the same fiscal year. The review team submits its recommendations for priority ranking of the construction projects within each category for each of the five fiscal years to the Regional Forester.

The Regional Forester reviews these recommendations in conjunction with other budget considerations and submits a proposed budget to the Chief of the Forest Service which expresses construction needs in total miles, total cost and total resource production for the Region. Following Congress' adoption of the Forest Service's budget, the Chief allocates funds for road and bridge construction to the Regions. Upon receiving final budget advice from the Chief, the Regional Forester assigns a percentage of available funds to each of the five priority categories for the current fiscal year. He then advises the Forest Supervisors of the final ranking of projects for the current fiscal year and the tentative ranking of projects for the following four fiscal years. (FSM 7710.33—2).

After the Regional Forester issues his list of priority rankings of proposed projects, any project may be abandoned or deferred for a variety of reasons including environmental concerns, schedule delays in complying with NEPA, and technical difficulties in design. Such decisions are made by the Forest Supervisor unless an administrative appeal is upheld. A high percentage of projects are dropped, deferred or modified during the course of the fiscal year. Before construction begins on any project, the Forest Supervisors must complete NEPA requirements. A project approved for funding through the CIP process is not actually funded until a Public Works Contract is awarded.

The majority of road construction projects in Region I, including those involving timber sale contracts, do not come under the CIP. In 1984, for example, an estimated 86 percent of roads constructed in Region I did not involve CIP funds.

In June, 1984, the wildlife federations brought this action against the United States Forest Service and Coston, alleging that the CIP violates the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321 *et seq.*, the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(d). They moved for a preliminary injunction restraining Coston from proceeding with CIP-authorized road construction projects and from accepting and awarding bids for new CIP projects. *They did not challenge the adequacy of EAs or EISs undertaken at the regional or site level, nor did they challenge the approval by Forest Supervisors of any of the individual construction projects which they sought to enjoin.* (Emphasis ours.) The district court denied the federations' motion for a preliminary injunction, holding that

regardless of how the [preliminary injunction] test is formulated, plaintiffs must ultimately make a reasonable showing that they will succeed on the merits of this action. After a careful evaluation, the court is not convinced that such a showing has been made.

## II.  Standard of Review.

This court will reverse an order denying a preliminary injunction only if the lower court abused its discretion or relied on an erroneous legal premise. *Martin v. International Olympic Committee*, 9 Cir., 1984, 740 F.2d 670, 674; *Sports Form, Inc. v. United Press International, Inc.*, 9 Cir., 1982, 686 F.2d 750, 752.

In this circuit, a party seeking a preliminary injunction must meet one of two alternative tests.  Under the first test, a court may issue a preliminary injunction if it finds that:

> (1) the [moving party] will suffer irreparable injury if injunctive relief is not granted, (2) the [moving party] will probably prevail on the merits, (3) in balancing the equities, the [non-moving party] will not be harmed more than [the moving party] is helped by the injunction, and (4) granting the injunction is in the public interest.

*Martin, supra*, 740 F.2d at 674–75, citing *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 9 Cir., 1975, 526 F.2d 86, 87.  In the case before us, the district court cited the above test in its order denying the wildlife federations' motion for a preliminary injunction.

The second alternative test requires that a moving party demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. *Martin, supra*, 740 F.2d at 675, citing *Wm. Inglis, supra*, 526 F.2d at 88.

We have reversed and remanded a district court denial of a preliminary injunction because the district court failed to apply this second test. *Inglis*.  The National Federation argues that the district court erred as a matter of law by failing to apply the balance of hardships test in the present case.  However, under the last part of the alternative test, "even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *Martin, supra*, 740 F.2d at 675; *Sports Form, supra*, 686 F.2d at 753; *see also Wm. Inglis, supra*, 526 F.2d at 88.  We regard the district court's formulation as sufficiently similar to the "fair chance of success on the merits" formulation as to properly state the "irreducible minimum" requirement for a preliminary injunction.  We hold that the district court did not rely on an erroneous legal premise and did not abuse its discretion in denying the requested preliminary injunction.

## III.  The NEPA Claim.

NEPA Section 102(2)(C) requires federal agencies to prepare and include an EIS "in every recommendation or report on proposals for legislative and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).  The federations argue that the Forest Service violated NEPA by failing to prepare a programmatic EIS on the priorities and objectives of the CIP, and by failing to prepare an annual EIS on the decisions by the Regional Forester as to which roads may actually receive funds under the program.

It is clear that NEPA requires the preparation of an EIS not only in proposals for specific Forest Service projects, but also in proposals for large-scale, substantive Forest Service programs which significantly affect the environment. *See Environmental Defense Fund v. Andrus*, 9 Cir., 1979, 596 F.2d 848, 851.  The federations argue that the CIP is such a program.  They view CIP as a "concerted road building program" which permanently removes roadless areas from future consideration by Congress for inclusion into the National Wilderness Preservation System. *See California v. Block*, 9 Cir., 1982, 690 F.2d 753, 762–63.  Moreover, they argue that road construction under the CIP destroys habitat and reduces big game populations as well as hunting and wilderness recreation opportunities.  For these reasons, the federations conclude that NEPA requires that the Forest Service prepare an EIS with regard to the 1981 development and implementation of the CIP, as well as EISs with

regard to the regional Forester's annual CIP funding decisions.

The heart of this case is a dispute as to the true nature of the CIP. Affidavits of Forest Service officials responsible for the implementation of the CIP state that the CIP is purely a budgeting and scheduling process and not a substantive program. Relying on *Andrus v. Sierra Club*, 1979, 442 U.S. 347, 99 S.Ct. 2335, 60 L.Ed.2d 943, the Forest Service argues that the CIP does not represent a proposal for legislation or major federal action requiring the preparation of an EIS under NEPA Section 102(2)(C).

In *Andrus*, several environmental organizations, alleging that curtailments in the budget of the National Wildlife Refuge System would significantly affect the quality of the human environment, sued the responsible Federal agencies for failing to prepare EISs to accompany the relevant appropriations requests. Holding that the procedural requirements of NEPA Section 102(2)(C) do not apply to appropriations requests, the Supreme Court rejected the lower court's view that such requests constitute "proposals for ... major Federal actions."

[The Court of Appeals' interpretation of NEPA] distorts the language of the Act, since appropriation requests do not "propose" federal actions at all; they instead fund actions already proposed. Section 102(2)(C) is thus best interpreted as applying to those recommendations or reports that actually propose programmatic actions, rather than to those which merely suggest how such actions may be funded. Any other result would create unnecessary redundancy. For example, if the mere funding of otherwise unaltered agency programs were construed to constitute major federal actions significantly affecting the quality of the human environment, the resulting EIS's would merely recapitulate the EIS's that should have accompanied the initial proposals of the programs. And if an agency program were to be expanded or revised in a manner that constituted major federal action significantly affecting the quality of the human environment, an EIS would have been required to accompany the underlying programmatic decision. An additional EIS at the appropriation stage would add nothing.

Even if changes in agency programs occur *because* of budgetary decisions, an EIS at the appropriation stage would only be repetitive. (emphasis in original).

*Andrus, supra,* 442 U.S. at 361–63, 99 S.Ct. at 2343–44.

Like the appropriations requests in *Andrus*, the CIP does not "propose" federal actions but instead "fund[s] actions already proposed," and already subject to NEPA analysis. The wildlife federations' description of the CIP as a substantive road-building program is misleading. The CIP merely sets out procedures for the Regional Forester to review construction proposals submitted by the Forest Supervisors in order to establish regional priorities for the allocation of limited federal funds. As in *Andrus*, to require the Forest Service to prepare programmatic and annual EISs on the CIP would be to create "unnecessary redundancy." *Andrus, supra,* 442 U.S. at 362, 99 S.Ct. at 2343.

Road construction and other land management activities of the Forest Service are conducted in compliance with NEPA requirements at various planning levels. The Forest Service prepares EISs to analyze its recommended five-year national resource program. EISs are prepared in connection with the development of the Forest Service's Regional Guides, which direct land management planning at the regional level. In addition, each Forest Supervisor prepares an EIS to accompany a comprehensive Forest-level Land and Resource Management Plan. 16 U.S.C. § 1604(g)(1); 36 C.F.R. 219.10(c)(1), (f), (g), (h) (1984). At the site level, environmental analyses are undertaken in conjunction with the planning of individual construction projects. In Region I, the Regional Forester will award no CIP funds for the construction of a specific road until the appropriate Forest Supervisor has completed all

NEPA requirements with regard to that project.

The federations do not deny that the Forest Service conducts environmental analyses at the levels described above. They point out that CIP procedures and priorities are not explicitly reviewed in Regional EISs, yet they do not challenge the adequacy of those EISs. Nor do the wildlife federations challenge the adequacy of relevant EISs and EAs prepared at the forest or project level. They allege that the CIP violates this court's holding in *California v. Block*, 9 Cir., 1982, 690 F.2d 753, by encouraging the funding of road construction in roadless lands (RARE II areas); however, they do not challenge any of the forty-two Region I sites approved for CIP funding in 1984.

■ The wildlife federations' NEPA claims are limited to the Forest Service's failure to prepare independent, additional EISs with respect to the development and annual implementation of the CIP. Given that the funding allocation procedures of the CIP do not "propose" federal actions but instead "fund actions already proposed" by the Forest Supervisors, and that these procedures can result in a construction award to a given project only if that project has met NEPA requirements, it seems clear to us that the federations are asking the trial court and this court to require precisely the kind of redundancy that the Court disapproved in *Andrus v. Sierra Club, supra.* The federations have not shown that they have any real chance of success on the merits of their NEPA claims.

## IV. *The APA Claim.*

The federations allege that Coston violated Forest Service regulations in implementing the CIP in 1981. 36 C.F.R. § 216 *et seq.* (1983). These regulations required public disclosure and opportunity for public review and comment with respect to "the formulation of standards, criteria, and guidelines needed for Forest Service programs." 36 C.F.R. § 216.2 (1983). Under the APA, this court is to set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), or without observance of procedure required by law, 5 U.S.C. § 706(2)(D). The federations argue that the CIP is a "program" under 36 C.F.R. § 216.1(a) (1983), and therefore, Coston's failure to carry out the Forest Service public comment regulations with respect to the formulation of the CIP was arbitrary and capricious and without observance of procedure required by law.

■ Under the definition applicable in 1981, " 'program' means land and resource activities, or combinations of them, conducted by the Forest Service...." 36 C.F.R. § 216.1 (1983). (Part 216 was revised in April, 1984, and the definition was eliminated. 49 Fed.Reg. 16991–16994; 36 C.F.R. § 216 *et seq.* (1984).) This section noted that "[s]upport activities, such as personnel matters and procurement and service contracting, are generally not included under this definition of program." 36 C.F.R. § 216.1(a) (1983). The federations argue that the "aptly named" Capital Investment Program is a "program" under these regulations because "[c]ertainly the construction of many miles of roads is a land or resource activity." However, as we have seen, the CIP is not a substantive program for the proposal and construction of roads. It involves a "land and resource activity" only to the extent that it sets out procedures for the allocation of regional funds for such activity. The district court was not clearly erroneous in concluding that the federations failed to demonstrate sufficiently their chance of success on the merits of their APA claim.

AFFIRMED.