[Civ. No. 66800. Second Dist., Div. Two. Apr. 18, 1983.]

EASEBE ENTERPRISES, INC., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent;
BAXTER RICE, as Director, etc., et al., Real Parties in Interest.

COUNSEL

Carole Ann Heller Solomon and Ralph B. Saltsman for Petitioner.

John K. Van de Kamp, Attorney General, and Thomas Scheerer, Deputy Attorney General, for Respondent and for Real Parties in Interest.

OPINION

GATES, J.—The instant petition presents the question, "May a business establishment maintain its State-issued license to sell liquor on public premises if it refuses to permit men to enter during a show featuring male dancers?" Our review of the applicable statutory and case authority compels a negative answer.

The underlying administrative proceedings were instituted in January 1981 when the Department of Alcoholic Beverage Control (hereinafter the Department) filed an accusation which alleged that Easebe Enterprises, Inc., dba Chippendale's, had engaged in gender-based discrimination when it refused to admit males during the performance of certain of its entertainments.

An administrative hearing was conducted at which it was established that the Department had received a complaint that Chippendale's was impermissibly discriminating against men. To investigate this claim, on two separate occasions the Department sent a different male investigator to Chippendale's in November 1980. They each were denied entry to the show which featured male

performers[1] because they (the investigators) were men. They were told the performance was for "ladies only." The owner of Chippendale's also informed a third investigator that men were not permitted to attend shows featuring the male dancers.

Two advertisements placed by Chippendale's in the Los Angeles Times were received in evidence at the hearing. One half of the first ad is a photograph of a man's head. At its top in large bold print is the phrase "Ladies Only"; the rest of the ad recites the time of performance, method of making reservations, and location of the premises. In the other ad, a photograph of a man's upper torso is prominently featured. It then states that on various evenings the show times are 6:45, 8:30 and 9:00 and concludes, "Gentlemen Welcome after 10:15."

It was further established that Chippendale's possessed a license permitting on premises sale and consumption of liquor and that liquor was sold during the performances of the male dancers.

The thrust of the testimony offered by Chippendale's was that it did not engage in discriminatory admittance practices. Chippendale's personnel testified that they did not categorically deny admission to men. Rather, they claimed, if men sought entrance, they were told that the show was designed specifically for women, that the presence of male customers would inhibit the male performers and the female audience, and that the show as presented was not the type of entertainment men would be expected to enjoy. Following such explanation, the prospective admittee would be informed he might enter the premises after the show was completed, thereby availing himself of an opportunity to mingle with the female customers.

Chippendale's also offered testimony designed to prove that if men were present, the "vibrant and alive" interaction between the male performers and the female audience would be inhibited. The director of the show explained the necessity for excluding men by analogizing to a children's show he had created, in which he had discouraged the children's parents from attending. He asserted that just as a lack of parental attendance encouraged the children to be creative, the lack of male presence permitted the women to engage in "all of that screaming and jumping up and down . . . ."

Following a three-day hearing, the administrative law judge found the allegations of gender-based discrimination to be true in that on two occasions Chippendale's had refused entrance to a male inspector of the Department. Such conduct was held to violate Civil Code section 51 and Business and Professions

---

[1]Although Chippendale's witnesses characterized the performers as "male exotic dancers" and the show as not being "as much a strip show as it is a musical production, a dance show," it is apparent that shorn of adjectival embellishments, the performers are mere ecdysiasts.

Code section 125.6.[2] The penalty recommended was revocation of Chippendale's liquor license. This revocation, however, would be stayed if Chippendale's agreed to file a corporate declaration stating that in the future it would not discriminate "against persons solely because of their male sex."

Thereafter, the Department of Alcoholic Beverage Control adopted the decision and recommendation of the administrative law judge. In turn, Chippendale's appealed to the Alcoholic Beverage Control Appeals Board to contest the Department's decision. After the submission of written briefs and consideration of oral argument, the appeals board filed a unanimous 18-page opinion in which it explained its affirmance of the Department's decision. Chippendale's then sought further review in this court.[3] When we summarily denied the request, it petitioned the Supreme Court for a hearing. That court granted hearing but retransferred the cause to us with directions to issue a writ of review. We have done so and now set forth our analysis of the salient points.

■  The determination of whether good cause exists to revoke a license is a matter within the discretion of the Department and not the courts. (*Department of Alcoholic Bev. Control* v. *Alcoholic Bev. etc. Appeals Bd.* (1981) 118 Cal.App.3d 720, 726 [173 Cal.Rptr. 582].) Our inquiry is limited to determining whether there is substantial evidence to support the decision of the Department. (*Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433, 436 [102 Cal.Rptr. 857, 498 P.2d 1105]; Bus. & Prof. Code, § 23090.2.) Therefore, to the extent that Chippendale's present claim of error is based on the argument that there was no evidence of gender-based discrimination, it necessarily fails.

■  Conflicting evidence on the issue was presented at the administrative hearing and its was resolved adversely to Chippendale's. Quite apart from the testimony of Chippendale's own personnel which chronicled their conceded attempts to dissuade potential male customers, the testimony of the Department investigators and the Chippendale's advertisements placed in the Los Angeles Times, clearly constituted substantial evidence upon which to base a finding of a sexually discriminatory admittance policy.

Such discrimination having been established, the Department's authority to revoke the liquor license is clear. Article XX, section 22, of the California Constitution vests in the Department the power to revoke "any specific

---

[2]The text and import of these statutes are set forth, *infra.*

[3]Business and Professions Code section 23090 provides: "Any person affected by a final order of the board, including the department, may within the time limit specified in this section, apply to the Supreme Court or to the court of appeal for the appellate district in which the proceeding arose, for a writ of review of such final order. The application for writ of review shall be made within 30 days after filing of the final order of the board."

alcoholic beverages license if it shall determine for good cause that the . . . continuance of such license would be contrary to public welfare . . . ." The apposite public policy is set forth in Civil Code section 51 (the Unruh Civil Rights Act). In pertinent part it provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."[4]

Chippendale's is undisputedly a business establishment within the meaning of the Unruh Civil Rights Act. (*In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992]; see also *Stoumen* v. *Reilly* (1951) 37 Cal.2d 713 [234 P.2d 969]; *Evans* v. *Fong Poy* (1941) 42 Cal.App.2d 320 [108 P.2d 942].) It has been granted a license which permits it to sell and serve "alcoholic beverages to the public for consumption on the premises." (Bus. & Prof. Code, § 23039, subd. (a)(1).) ▉ Its acceptance of this license imposes upon it the corollary duty to refrain from any sex discrimination in performing the licensed activity. A failure to honor this obligation provides a basis for revocation of the license (Bus. & Prof. Code, § 125.6.)[5] Chippendale's violated its responsibilities by refusing admittance to customers solely because they were men.

▉ To avoid the force of this conclusion, Chippendale's argues that its male dancers engage in a form of communication protected by the First Amendment so that the revocation of its license acts as an impermissible restriction on constitutionally protected speech. This argument is quite unpersuasive since in so far as these proceedings are concerned, its factual predicate is false. Nothing in the Department's decision will, per se, preclude Chippendale's from continuing

---

[4]In 1974, the Legislature amended Civil Code section 51 to add sex to the specifically enumerated bases of prohibited discrimination. Its express intent in so doing was " ' . . . to bring it to the attention of the legal profession that the Unruh Act provides a remedy for *arbitrary discrimination against women (or men)* in public accommodations which are business enterprises.' . . ." (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115], cert. den., 459 U.S. 858 [74 L.Ed.2d 111, 103 S.Ct. 129]; italics added.)

[5]Business and Professions Code section 125.6 states in pertinent part: "Every person who holds a license under the provisions of this code is subject to disciplinary action under the disciplinary provisions of this code applicable to such person if, because of the applicant's race, color, *sex*, religion, ancestry, physical handicap, marital status, or national origin, he or she refuses to perform the licensed activity or aids or incites the refusal to perform such licensed activity by another licensee, or if, because of the applicant's race, color, *sex*, religion, ancestry, physical handicap, marital status, or national origin, he or she makes any discrimination, or restriction in the performance of the licensed activity. . . . [¶] 'License,' as used in this section, includes 'certificate,' 'permit,' 'authority,' and 'registration' or any other indicia giving authorization to engage in a business or profession regulated by this code. [¶] 'Applicant,' as used in this section means a person applying for licensed services provided by a person licensed under this code." (Italics added.)

to "speak out" through this form of entertainment.[6] All that will be withdrawn is its privilege to sell alcoholic beverages while it is so engaged. In addition, no citizen has a constitutional right to demand the use of a *public* platform when he wishes to expose his views only to that segment of the populace he believes will regard them with favor.

Of course, Chippendale's also has the alternative of practicing a non-discriminatory admittance policy and thereby retaining its liquor license. It may be true as it asserts, that if it is forced to admit men under the Unruh Act, the ultimate result will be the commercial demise of the program since women would no longer wish to attend. However, such fact, if it be a fact, is not determinative. An entrepreneur's discriminatory practice based upon ostensible rational economic self-interest still violates public policy as codified in Civil Code section 51. (*Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d 721, 740-741, fn. 9.)

We must also reject Chippendale's contention that its exclusion of men is not the type of "arbitrary" discrimination prohibited by the Unruh Act. (See fn. 4, *supra*; *Hales* v. *Ojai Valley Inn & Country Club* (1977) 73 Cal.App.3d 25, 28-29 [140 Cal.Rptr. 555, 89 A.L.R.3d 1].) Essentially, it is urged that changing social perspectives recognize that in some situations a policy founded on gender-based discrimination is consistent with everyday realities and in fact inures to the benefit of those who have been the victims of past societal and legal discrimination. It is true that under this concept, certain governmental practices have successfully withstood claims of impermissible sex discrimination.[7] Indeed, were we the triers of fact, or were we writing on an entirely clear slate, we might find such theory persuasive here. However, we do not regard it to be within the purview of an intermediate appellate court, at this late date, to substitute its perspective for that of the Department and to hold that Chippendale's challenged practices constitute an exception to the Unruh Act *as a matter of law* because they are "benignly inspired."

[6]Since this proceeding does not involve a direct attempt by the state to proscribe the particular performances presented by Chippendale's, that aspect of the state's power to prohibit certain forms of entertainment in establishments which serve liquor is not at issue. (Cf. *New York State Liquor Authority* v. *Bellanca* (1981) 452 U.S. 714 [69 L.Ed.2d 357, 101 S.Ct. 2599]; *California* v. *La Rue* (1972) 409 U.S. 109 [34 L.Ed.2d 342, 93 S.Ct. 390]; *Morris* v. *Municipal Court* (1982) 32 Cal.3d 553 [186 Cal.Rptr. 494, 652 P.2d 51].)

[7](See, e.g., *Michael M.* v. *Sonoma County Superior Court* (1981) 450 U.S. 464 [67 L.Ed.2d 437, 101 S.Ct. 1200] [upholding crime of statutory rape (Pen. Code, § 261.5) which only punishes males because statute primarily protects women and prevents unwanted teenage pregnancies]; *Schlesinger* v. *Ballard* (1975) 419 U.S. 498 [42 L.Ed.2d 610, 95 S.Ct. 572] [upholding regulation permitting female naval officers to remain in Navy a longer period before facing mandatory discharge for want of promotion than male officers as its purpose was to compensate women for their reduced opportunity to demonstrate competence as a result of being excluded from sea duty]; *Kahn* v. *Shevin* (1974) 416 U.S. 351 [40 L.Ed.2d 189, 94 S.Ct. 1734] [upholding a statute granting widows, but not widowers, a property tax exemption on the ground that the tax preference compensated women for discriminatory economic practices].)

The decision of the Department of Alcoholic Beverage Control is affirmed, and the petition is denied.

Compton, Acting P. J., and Beach, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied June 15, 1983.