TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-905 |
| of | : | APRIL 7, 1987 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| ANTHONY S. DA VIGO<br>Deputy Attorney General | : | |

_____

THE HONORABLE HERSCHEL ROSENTHAL, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

Is the Department of Alcoholic Beverage Control authorized to revoke the license of a private club on the basis of its discriminatory membership practices?

CONCLUSION

The Department of Alcoholic Beverage Control is authorized under the California Constitution to revoke a private club license on the basis of discriminatory membership practices upon an independent determination for good cause that the continuance of such license would be contrary to public welfare or morals.

ANALYSIS

The present inquiry is whether the Department of Alcoholic Beverage Control ("department", *post*) is authorized to revoke the license of a private club on the basis of its discriminatory membership practices. It is established that the issuance of such a license does not in itself involve the state in such discriminatory practices as to constitute a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. (*Moose Lodge No. 107* v. *Irvis* (1972) 407 U.S. 163, 171-177.) Similarly, article I, section 7, subdivision (a) of the California Constitution applies to state, not private action. (*Garfinkle* v. *Superior Court* (1978) 21 Cal.3d 268, 281-282; and see *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 468-469.) While the California Supreme Court's interpretation of the reach of the safeguards of the state equal protection clause is not bound by the federal decisions analyzing the state action requirement of the Fifth and Fourteenth Amendments, the latter decisions will be carefully considered insofar as they are persuasive. (*Id.*, at p. 469.) No state appellate court has held that the issuance of a license per se constitutes such a significant involvement with private conduct as to fall within the state constitutional proscription. Hence, we reiterate our prior opinion that revocation of such a license is not compelled under the state or federal constitutions. (Opn. No. IL 75-70 (1974) unpub.)

There can be little doubt, however, that the state Legislature may provide for the denial of a license to sell alcoholic beverages to a private club which engages in discriminatory membership practices. (*B.P.O.E. Lodge No. 2043 of Brunswick* v. *Ingraham* (Supr. Ct. Maine, 1972) 297 A.2d 607, app. dism. 410 U.S. 903.) The sole question now presented is whether the state has so authorized the department. We initiate the examination with article XX, section 22, of the California Constitution:

> ". . . . . . . . . . . . . . . . . . . . . . .
>
> "All alcoholic beverages may be bought, sold, served, consumed and otherwise disposed of in premises which shall be licensed as provided by the Legislature. In providing for the licensing of premises, the Legislature may provide for the issuance of, among other licenses, licenses for the following types of premises where the alcoholic beverages specified in the licenses may be sold and served for consumption upon the premises:
>
> ". . . . . . . . . . . . . . . . . . . . . . .
>
> "(d) Under such conditions as the Legislature may impose, for . . . bona fide clubs after such clubs have been lawfully operated for not less than one year.

2

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"*The Department of Alcoholic Beverage Control shall have the exclusive power*, except as herein provided and *in accordance with laws enacted by the Legislature, to license the* manufacture, importation and *sale of alcoholic beverages in this State*, and to collect license fees or occupation taxes on account thereof.  *The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals*, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ."   (Emphasis added.)

Under subdivision (d), the Legislature may provide for the issuance of a license to "bona fide" clubs under such conditions as it may impose.  Further, the department has the exclusive power in accordance with the laws enacted by the Legislature to license the sale of alcoholic beverages.

We first examine those legislative enactments which pertain to discriminatory practices of licensees including alcoholic beverage licensees.  The issuance of a license to clubs with discriminatory membership practices is a matter of special legislative cognizance.  Section 125.6[1] provides generally:

"Every person who holds a license under the provisions of this code is subject to disciplinary action under the disciplinary provisions of this code applicable to such person if, because of the applicant's race, color, sex, religion, ancestry, physical handicap, marital status, or national origin, he or she refuses to perform the licensed activity or aids or incites the refusal to perform such licensed activity by another licensee, or if, because of the applicant's race, color, sex, religion, ancestry, physical handicap, marital status, or national origin, he or she makes any discrimination, or restriction in the performance of the licensed activity.  *Nothing in this section shall be interpreted to* apply to discrimination by employers with regard to employees or prospective employees, nor shall this section *authorize action against any club license issued pursuant to Article 4 (commencing with Section 23425) of Chapter 3 of Division 9 because of discriminatory membership policy*."

---

[1] Undesignated section references herein are to the Business and Professions Code.

3

"...................

"'Applicant,' as used in this section means a person applying for licensed services provided by a person licensed under this code.

"....................." (Emphases added.)

Clearly, violation of this section results whether the refusal "to perform the licensed activity" on an equal basis occurs at the point of or following admission to the premises (cf. *Easebe Enterprises, Inc.* v. *Alc. Bev. Cont. App. Bd.* (1983) 141 Cal.App.3d 981), and provides a basis for license revocation (*id.*, at p. 986; 60 Ops.Cal.Atty.Gen. 394 (1977)). Thus, where club membership is restricted on the basis of race, color, sex, religion, ancestry, physical handicap, marital status or national origin, and the sale of alcoholic beverages is restricted to members and their guests, the club license is subject to disciplinary action under section 125.6 unless the club is licensed under article 4.

Of the numerous types or categories of licenses issued by the department, many but not all of which are listed in section 23320, five pertain to clubs:

1) section 23320(30)(a) - certain nonprofit social or athletic clubs

2) section 23320.1 - certain other social or athletic clubs

3) section 23320(30)(c) - certain veterans organizations

4) section 24042 - public and private bar on same premises

5) section 23320(30)(b) - certain national fraternal organizations, and 30 subcategories

The first four of the five categories of club license are subject to the antidiscrimination provisions of section 125.6:

Section 23320(30)(a) designates an on-sale general license for bona fide clubs. For purposes of this license, "club" is defined in section 23037:

"'Club' means a corporation or association which is the owner, lessee, or occupant of an establishment operated solely for objects of a social or athletic nature but not for pecuniary gain, having a bona fide membership list, and the majority of the members of which pay dues at least once in every year, and the property as well as the advantages of

4

85-905

which belong to the members, and which sells alcoholic beverages only to its members and its bona fide guests. A guest is defined as a person who is actually a houseguest, or a person whose presence as a guest is in response to a specific invitation for the special occasion."

Section 23320.1 designates a special on-sale general license which is described in section 23399.2:

"Premises for which a special onsale general license is issued may be operated only as a club by an organization which meets all the requirements of Section 23037, or by an organization which meets all of such requirements except that it is operated for pecuniary gain, or its property is not owned by Section 23320(30)(c) designates a veterans' club license which may be issued, as specified in section 23451, to:

"[a]ny post, chapter, camp, or other local unit, composed solely of veterans, of an organization composed solely of veterans which has been chartered by the Congress of the United States for patriotic, fraternal, or benevolent purposes, and which post, chapter, camp, or other local unit has, as the owner, lessee, or occupant thereof, operated an establishment for any such purpose for Section 24042 designates an on-sale general duplicate license for a room reserved for exclusive use of designated patrons, and may be issued to "[a]ny licensee under an on-sale general license or an onsale general license for seasonal business who maintains upon or within the premises for which the license is issued more than one room in which there is regularly maintained a fixed counter or service bar at which distilled spirits are served to members of the public for consumption within the licensed premises . . .", provided that the department shall, in the event such license is issued for a room reserved for the exclusive use of designated patrons, endorse upon such license the terms and conditions under which the privileges conferred by the license may be exercised.

The department is, in our view, authorized under the express provisions of section 125.6 to revoke a license designated in the first three categories for refusal to perform the licensed activity, or in the fourth category for participating in the discrimination or restriction in the performance of the licensed activity, on the basis of race, color, sex, religion, ancestry, physical handicap, marital status, or national origin.

The fifth category of club license, designated in section 23320(30)(b), is governed by article 4 of chapter 3 of division 9 which contains its own special provisions regarding discrimination. Section 125.6 does not, by its express terms, apply to an

5

"article 4" club license designated in section 23320(30)(b).  The department is authorized to issue such a license to sell and serve alcoholic beverages for consumption within the licensed establishment only to bona fide members and their bona fide guests.  (§§ 23430 & 23431.)  An "article 4" club is defined as follows (§ 23425):

> "For the purposes of this article 'club' means:
>
> "(a) Any chapter, aerie, parlor, lodge, or other local unit of an American national fraternal organization which has as the owner, lessee, or occupant thereof operated an establishment for fraternal purposes.  An American national fraternal organization as used in this subdivision shall actively operate in not less than 20 states of the Union and have not less than 175 local units in those 20 states, and shall have been in active continuous existence for not less than 20 years.
>
> "(b) Any hall or building association of a local unit mentioned in subdivision (a), all of the capital stock of which is owned by the local unit or the members thereof, and which operates the clubroom facilities of the local unit."

The "article 4" club license is divided into 30 subcategories.  (See Chart A.)  Four of these contain the following restriction:

> "It shall be unlawful for any club licensed pursuant to this section to make any discrimination, distinction, or restriction against any person on account of such person's color, race, religion, ancestry, national origin, sex, or age."

They are tennis clubs in existence for not less than 45 years (§ 23426.5), social organizations fostering pride of national origin (§ 23428.24), the Hidalgo Society (§ 23428.25), and property owners' associations (§ 23428.26).  Another contains similar language, but excluding reference to sex and age.  This category consists of handball and racquetball clubs (§ 23428.19).  Two categories expressly prohibit the issuance of a license to any club "which makes any discrimination, distinction, or restriction against any person on account of such person's age, sex, color, race, religion, ancestry, or national origin."  They are labor councils (§ 23428.18) and letter carriers locals (§ 23428.23).  Two categories prohibit the issuance of a license to any club which restricts membership or the use of its facilities on the basis of race, religion, national origin, and sex.  They are press clubs (§ 23428.5) and corporations for promotion of international understanding (§ 23428.22).  Another category containing similar language,

6

but also including reference to color and creed, is comprised of condominium cooperatives and associations (§ 23428.20).  Another similar provision, but also including age, pertains to local dental societies (§ 23428.21).  Another similar provision, but also including color, ancestry and age, applies to certain associations of peace officers and employees of a law enforcement agency (§ 23428.27).

No restrictions respecting discriminatory practices appear in the general definition (§ 23425) or in 18 of the special categories:  golf, swimming or tennis club (§ 23426), yacht club (§ 23427), bar association (§ 23428), county medical association (§ 23428.1), rod and gun club (§ 23428.2), mobilehome owners social club (§ 23428.4), stockmen's association (§ 23428.6), horse riding club (§ 23428.7), Native Sons of the Golden West (§ 23428.8), social club (§ 23428.9), peace officers' association (§ 23428.10), firemen's association (§ 23428.11), social and religious club (§ 23428.12), airport terminal club (§ 23428.13), national guard club (§ 23428.14), American Citizens Club (§ 23428.15), social luncheon club (§ 23428.16), and American GI Forum of the U.S. (§ 23428.17).[2]

It may be argued that the legislative election to condition the issuance of a license upon the absence of discriminatory practices by certain "article 4" clubs, but not others (see Chart B), is indicative of a legislative intent not to impose such a condition with respect to those clubs for which such a limitation is not expressly provided.  This interpretation is consistent with the rule that where a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted.  (*Marsh* v. *Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 891.)

The existence of that general rule of construction, however, does not dictate the result in this situation. Where the Legislature has actively inserted anti-discrimination provisions with respect to 12 categories (the bulk of which involve categories created in the last two decades) and has said nothing respecting discrimination with respect to the remaining 18 categories (most of which were created in earlier years, prior to the legislative assumption of a highly active stance in enacting non-discrimination measures), it is at least as plausible to conclude that the Legislature intended to take no position on the issue in those particular situations.

---

[2] The term "club" as hereinabove defined is a bona fide club within the meaning of California Constitution, article XX, section 22, *supra*.  (§ 23429.)  Additional specifications as to such clubs are contained in sections 23434 and 23435.

7

Given the strength of the social policy against discrimination expressed in the sweeping language of the Unruh Civil Rights Act (Civ. Code, § 51) and other provisions aimed at combatting invidious discrimination, it is difficult to read into the omission of an anti- discrimination clause in 18 categories of social clubs not connected by any apparent theme or motif a deliberate legislative endorsement of acts of discrimination for those groups.[3]

We therefore conclude that the Legislature has neither prohibited nor endorsed discrimination in the case of 18 categories of article 4 clubs. We turn next to the question of whether the Department of Alcoholic Beverage Control has independent power to act.

Article XX, section 22, of the California Constitution, set forth at the outset, provides in part that "The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals . . . ." This provision is self-executing, and revocation against a license may be based on that ground alone if the licensee is otherwise accorded due process of law. (*Vallerga* v. *Department of Alc. Bev. Cont.* (1959) 53 Cal.2d 313, 318.) In *Moore* v. *State Bd. of Equal.* (1946) 76 Cal.App.2d 758, 765, the court stated:

"The attorney general's third and fourth points, i.e., that the Constitution confers power independently on the board and that the board is not restricted in the revocation of a license to the grounds stated in the act, but may take disciplinary action on other grounds within the constitutional provision are amply sustained by the authorities. . . ."

Clearly, the department may act pursuant to and consistent with the preexisting state or federal legislative or constitutional indications of public policy. In *Easebe Enterprises, Inc.* v. *Alc. Bev. Cont. App. Bd.*, *supra*, 141 Cal.App.3d 981, it was held that the department was authorized to revoke the license of a business establishment engaged in a sexually discriminatory admittance policy, based upon the apposite public policy set forth in the Unruh Civil Rights Act, Civil Code section 51. (*Id.*, at pp. 985-986.)[4] The question now presented is whether the department has the power, in its

---

[3] Reinforcement of that concept is found by noting that one of the categories of clubs exempted -- airport terminal clubs—is almost certainly barred from discrimination under the Unruh Civil Rights Act as a business establishment. It would be difficult to find that silence in the code section regarding liquor licenses was intended to exempt such clubs from the operations of the general provisions of Civil Code section 51.

[4] *Easebe* involved a place of public business to which the Unruh Act clearly applied. For

discretion, to deny, suspend or revoke a license upon a cause or event which the Legislature has not prescribed as a condition to its issuance or continuation.

The department's constitutional power and discretion must, of course, be considered in the context of article XX, section 22, as a whole. Such authority must be construed in such a manner as not to conflict with the power expressly conferred by that section upon the Legislature to ". . . provide for the issuance of . . . licenses . . . (d) [u]nder such conditions as the Legislature may impose, for . . . bona fide clubs . . . ." Thus, while the discretion to be exercised in a specific case is broad (*Jacques, Inc.* v. *State Bd. of Equalization* (1957) 155 Cal.App.2d 448, 458), it "is not absolute but must be exercised in accordance with the law, and the provision that it may revoke a license 'for good cause' necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals." (*Boreta Enterprises, Inc.* v. *Department of Alc. Bev. Cont.* (1970) 2 Cal.3d 85, 95; *Vallerga* v. *Department of Alc. Bev. Cont.*, *supra*, 53 Cal.2d at pp. 318-319; *Covert* v. *State Bd. of Equal.* (1946) 29 Cal.2d 125, 131-132.)

*Boreta Enterprises, Inc.* v. *Department of Alc. Bev. Cont.*, *supra*, 2 Cal.3d 85, involved an attempt by the department to revoke the license of a "bona fide eating place" because it employed "topless" waitresses. The California Supreme Court, having reversed the department's action on carefully circumscribed grounds relating to the sufficiency of the evidence, observed (*id.*, at p. 106):

"[A]lthough it appears unnecessary, we point out that our conclusions have been reached on the record before us. We are not unaware of the public concern for proper regulation of premises licensed to sell alcoholic beverages. Our holding confers on them neither a general sanction to employ topless or other similarly undressed waitresses nor a general immunity from the Department's disciplinary action in the event they do. If such purveying of liquor is in fact attended by the deleterious consequences which the Department claims, it should have no difficulty, in appropriate disciplinary proceedings, in proving them. In a word it should establish 'good cause' and make out its case. Alternatively, the Department

---

purposes of this analysis, we assume without deciding that the term "private club" does not include any organization which may properly be deemed a "business establishment." (Cf. §§ 23037, 23399.2, 23431; 35 Ops.Cal.Atty.Gen. 93, 99-100 (1960); cf. generally *Isbister* v. *Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72, 76-77; *Rotary Club of Duarte* v. *Board of Directors of Rotary International* (1986) 178 Cal.App.3d 1035, hearing den. June 18, 1986; App.Pendg. 93 L.Ed.2d 350, 107 S.Ct. 396 (Nov. 3, 1986).)

could draw upon its expertise and the empirical data available to it and adopt regulations covering the situation.  (§ 25750.)"

Thus, *Boreta* reaffirms the department's authority to revoke or suspend an alcoholic beverage license upon grounds supported by sufficient evidence.  That the holding was based solely upon the department's failure to produce evidence is underscored by the decision only three years later in *Locker* v. *Kirby* (1973) 31 Cal.App.3d 520, in which the court upheld a department regulation prohibiting licensees from employing "topless" waitresses on premises where alcoholic beverages were sold, stating in part (*id.*, at p. 526, n. 4):

>"Section 25750 of the Business and Professions Code authorizes respondent to make and prescribe reasonable rules.  When respondent tried to take disciplinary action against licensees employing topless waitresses simply on the ground that such employment was contrary to public welfare or morals, without a factual showing of the point our Supreme Court suggested the adoption of factually grounded regulations as a reliable alternative.  [Citing *Boreta*.]"

Hence, *Boreta* does not require a statutory basis for the department's regulatory determinations.

Thus, we do not view the comprehensive statutory provisions respecting the licensure of "article 4" clubs, or the omission of such clubs from the anti-discrimination provisions of section 125.6, as an intended limitation of the department's constitutional authority to act upon its independent determination based on "good cause" that the continuance of a license of a private club with circumscribed admission policies would be contrary to public welfare or morals.  This view is supported by the Supreme Court's observation in *Boreta* (2 Cal.3d at 99, n. 22):

>"We do not mean to intimate that the Department is confined to considering violations of criminal statutes or departmental directives as grounds for suspension or revocation under section 24200, subdivision (a). It is not disputed that while the Department may properly look to and consider a licensee's violation of the Alcoholic Beverage Control Act, the Penal Code, other state and federal statutes, or Department rules as constituting activities contrary to public welfare or morals, it may also act on situations contrary to the public welfare or morals in the sale or serving of alcoholic beverages *regardless of legislative expressions of policy on the subject* or prior departmental announcements."  (Emphasis added.)

The independent constitutional authority of the department was again demonstrated in *Kirby* v. *Alc. Bev. Cont. App. Bd.* (1975) 47 Cal.App.3d 360, in which it was contended that the department rule regulating "topless" exposure on licensed premises conflicted with Penal Code sections 318.5 and 318.6 permitting cities and counties to regulate such activity. The court held in part that "[s]ince the rule was promulgated pursuant to the department's constitutional authority to regulate the sale of drinks in premises it licenses, no issue of preemption is involved." (*Id.*, at p. 366.)

It is emphasized that we are not presented here with conflicting determinations of the department and the Legislature. In certain respects, as we have seen, the Legislature has remained silent with respect to discrimination. It has also expressly recognized and restated, however, the department's preexisting constitutional authority to exercise its independent judgment on questions of public welfare and morals. Section 24200 provides in part:

"The following are the grounds which constitute a basis for the suspension or revocation of licenses:

"(a) When the continuance of a license would be contrary to public welfare or morals; but proceedings under this section upon this ground are not a limitation upon the department's authority to proceed under Section 22 of Article XX of the California Constitution."

We are not called upon to examine what might constitute "good cause" for the department's determination in any given case. Clearly, the subjective moral notions of the department itself do not necessarily express or reflect actual public morality. Rather, the modifying adjective "public" necessarily indicates the obligation to apply an objective standard. (*Id.*, at p. 103.) In *Boreta*, the court quoted *Gossman* v. *Gossman* (1942) 52 Cal.App.2d 184, 194-195, in part as follows:

"Courts have often asserted that such power is broad and inclusive. That assertion is true, but it is true only within the limits of fixed legal principles [citation]. Such power cannot enlarge its own boundaries or support acts requiring other legal bases. Even within its legal limits the power is not unbridled. The mere fact that a court may have jurisdiction to make an order does not equip it to exercise *judicial discretion*. Its acts must not only be confined within the field of *discretion* but must also be of a character within the bounds of the limiting adjective 'judicial.' . . . The term 'judicial discretion' was defined in *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424, as follows: 'The discretion intended, however, is not a capricious or

11

arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles.'" (*Id.*, at p. 96.)

It is assumed for purposes of this analysis that such authority would be exercised within the bounds of constitutional constraints, that the sale of alcoholic beverages being essentially outside the sphere of privacy or private entitlements, is a distinctly separate and independent activity not inherent in or essential to the associational structure of a specific club (*B.P.O.E. Lodge No. 2043 of Brunswick* v. *Ingraham*, *supra*, 297 A.2d at p. 611), that such discrimination is arbitrary and devoid of any rational relationship to the legitimate purposes for which the club was created (*id.*, at p. 616; cf. *Isbister* v. *Boys' Club of Santa Cruz, Inc.*, *supra*, 40 Cal.3d at 76-77, 85, 88), and that such enforcement does not aim at the suppression of speech, distinguish between prohibited and permitted activity on the basis of viewpoint, or lie upon the basis of any constitutionally impermissible criteria (see *Roberts* v. *United States Jaycees* (1984) 468 U.S. 609, 623).

Within these parameters, however, the department may examine the universe of state and federal statutes and regulations, as well as common law and judicial pronouncements where applicable, governing discriminatory practices to guide its determinations as to the relationship between such practices and the public welfare or morals. It may determine upon its own factual investigation the impact upon society as a whole and upon designated groups of various forms of discrimination.

Careful distinctions should be drawn between those forms of discrimination which are invidious and those rationally founded. Any determination providing grounds for revocation or suspension must be predicated expressly upon an affirmative finding that such discrimination is contrary to the public welfare or morals. Finally, such findings must be supported by sufficient evidence. *(Boreta Enterprises, Inc.* v. *Department of Alc. Bev. Cont.*, *supra*, 2 Cal.3d 85.)* In the latter case, the court observed that there may be cases in which the conduct of a licensee is so extreme, vile or corruptive that the department could conclude that it is per se contrary to public morals. (*Id.*, at p. 101.) Such determinations, which may be neither arbitrary nor capricious, must be made in the first instance by the department. (Cf. *Kirby* v. *Alc. Bev. App. Bd.* (1972) 7 Cal.3d 433, 436-437; and see *Easebe Enterprises, Inc.* v. *Alc. Bev. Cont. App. Bd.*, *supra*, 141 Cal.App.3d at 987—the court will not substitute its judgment for that of the department as to whether certain discrimination was "benignly inspired.")

It is concluded generally, however, that the department is authorized to revoke the license of any club, including an "article 4" club, on the basis of its discriminatory membership practices pursuant to statutes prohibiting such practices or upon its determination for "good cause" that the continuance of such license would be

12

contrary to public welfare or morals. While the department may do so on a case by case basis upon an adequate factual showing the adoption of regulations may be the preferred course. (See, *Boreta Enterprises, Inc.* v. *Department of Alc. Bev. Cont.*, *supra*, 106.)

CHART A

SUMMARY OF ARTICLE 4 SUBCATEGORIES

Article 4 club (§ 23425):  national fraternal organization

Article 4 subcategories:

| | | |
|---|---|---|
| 1) | § 23426 | golf, swimming or tennis club |
| 2) | § 23426.5 | tennis club (in existence 45 years) |
| 3) | § 23427 | yacht club |
| 4) | § 23428 | bar association |
| 5) | § 23428.1 | county medical association |
| 6) | § 23428.2 | rod and gun club |
| 7) | § 23428.4 | mobile home owners social club |
| 8) | § 23428.5 | press club |
| 9) | § 23428.6 | stockmen's association |
| 10) | § 23428.7 | horse riding club |
| 11) | § 23428.8 | Native Sons of Golden West |
| 12) | § 23428.9 | social club |
| 13) | § 23428.10 | peace officers' association |
| 14) | § 23428.11 | firemen's association |
| 15) | § 23428.12 | social and religious club |
| 16) | § 23428.13 | airport terminal club |
| 17) | § 23428.14 | national guard club |
| 18) | § 23428.15 | American Citizens Club |
| 19) | § 23428.16 | social luncheon club |
| 20) | § 23428.17 | American GI Forum of the U.S. |
| 21) | § 23428.18 | labor council |
| 22) | § 23428.19 | handball or raquetball club |
| 23) | § 23428.20 | condominium coops and associations |
| 24) | § 23428.21 | local dental society |
| 25) | § 23428.22 | corporations for international understanding |
| 26) | § 23428.23 | letter carriers local |
| 27) | § 23428.24 | social organizations for pride of national origin |
| 28) | § 23428.25 | Hidalgo Society |
| 29) | § 23428.26 | property owners' association |
| 30) | § 23428.27 | peace officers' and employees' association |

CHART B

## ALCOHOLIC BEVERAGE LICENSE:  RESTRICTIONS AS TO DISCRIMINATORY CLUB MEMBERSHIP PRACTICES BASED ON

|  | Race | Color | Rel./ Creed | Ances- try | Nat'l Orig. | Sex | Age | Phys. Hand. | Merit. Status |
|---|---|---|---|---|---|---|---|---|---|
| Clubs subject to § 125.6 | X | X | X | X | X | X |  | X | X |
| Art. 4 club Subcat.  1 |  |  |  |  |  |  |  |  |  |
| 2 | X | X | X | X | X | X | X |  |  |
| 3 |  |  |  |  |  |  |  |  |  |
| 4 |  |  |  |  |  |  |  |  |  |
| 5 |  |  |  |  |  |  |  |  |  |
| 6 |  |  |  |  |  |  |  |  |  |
| 7 |  |  |  |  |  |  |  |  |  |
| 8 | X |  | X |  | X | X |  |  |  |
| 9 |  |  |  |  |  |  |  |  |  |
| 10 |  |  |  |  |  |  |  |  |  |
| 11 |  |  |  |  |  |  |  |  |  |
| 12 |  |  |  |  |  |  |  |  |  |
| 13 |  |  |  |  |  |  |  |  |  |
| 14 |  |  |  |  |  |  |  |  |  |
| 15 |  |  |  |  |  |  |  |  |  |
| 16 |  |  |  |  |  |  |  |  |  |
| 17 |  |  |  |  |  |  |  |  |  |
| 18 |  |  |  |  |  |  |  |  |  |
| 19 |  |  |  |  |  |  |  |  |  |
| 20 |  |  |  |  |  |  |  |  |  |
| 21 | X | X | X | X | X | X | X |  |  |
| 22 | X | X | X | X | X |  |  |  |  |
| 23 | X | X | X |  | X | X |  |  |  |
| 24 | X |  | X |  | X | X | X |  |  |
| 25 | X |  | X |  | X | X |  |  |  |
| 26 | X | X | X | X | X | X | X |  |  |
| 27 | X | X | X | X | X | X | X |  |  |
| 28 | X | X | X | X | X | X | X |  |  |
| 29 | X | X | X | X | X | X | X |  |  |
| 30 | X | X | X | X | X | X | X |  |  |

15

85-905

*****

85-905

*****